# Exhibit A

## NATURAL GAS AGREEMENT

This agreement ("Agreement") is made and entered into on this date, _____, between Snyder Brothers, Inc. ("Seller") Ohio Valley Medical Center ("Buyer") (hereinafter jointly referred to as "Parties"). The terms applicable to this Agreement are as follows:

1. **Terms:** The term of this Agreement ("Term") shall run from 12:01 AM as of the date of this Agreement and the terms of this Agreement shall apply to and shall be incorporated in all purchase orders agreed to between the parties entered into from the time of execution of this Agreement going forward during such Term (unless specifically agreed to otherwise in any particular purchase order with respect to such purchase order), the form of which purchase orders shall be as set forth in Exhibit "A".

Either party may terminate this Agreement by giving the other party thirty (30) days prior written notice to their address below; provided, however, that neither party may terminate this Agreement with respect to any particular purchase order before the expiration of any Sales Period provided for in any such purchase order then effective. In the event of a conflict between this Agreement and the terms of any such purchase order, the purchase order shall control.

2. **Contract Quantities:** Seller agrees to sell and deliver, and Buyer agrees, with Seller as Buyer's sole supplier, to buy and take delivery of all of the quantities of natural gas ("Gas") required at the Point of Delivery specified on purchase order used at the Buyer facilities, which facilities are in existence at the time this Agreement is entered into, provided by the meters designated in the applicable purchase order during the Term of this Agreement ("Facilities"). Provided, however, that the obligations of Seller to provide Gas to such Facilities may not be increased or decreased by any modification of Facilities during the Term, except as may be mutually agree by the parties to the contrary in a writing signed by the parties.

S.K.
6/21/19

~~Seller after the Term shall have a right of first refusal from Buyer~~ a time to match any third party offer to provide gas to the Facilities, exercisable within fifteen (15) days from date Buyer provides Seller with a true and correct copy of the third party offer, which third-party offer ~~Buyer is~~ willing to provide to Seller.

3. **Transportation:** Seller shall obtain transportation to the Point of Delivery, and be responsible for the payment of all related taxes prior to the Point of Delivery. Buyer shall obtain transportation from the Point of Delivery, and be responsible for all related taxes at and from the Point of Delivery.

Buyer authorizes Seller to act as its agent for scheduling and confirming the transportation of gas with the transporter at the Point of Delivery.

In the event that transporter (Local Utility) implements a mandatory service charge for suppliers or adopts any other changes in its requirements during the term of this Agreement that results in any direct increase in costs to Seller in providing Gas to Buyer, Seller shall pass such increased costs through to Buyer and Buyer agrees to pay such increased costs.

4. **Scheduling and Imbalance:** Seller will schedule deliveries on a daily basis according to the quantities on each applicable purchase order. Buyer will forward accurate meter readings to Seller for use by Seller in adjusting deliveries to Buyer's actual usage during that month. Transportation imbalances, scheduling penalties and related charges will be the responsibility of the Party whose failure caused the imbalance.

If any quantity imposed at any time and for any reason upon Snyder by the Local Utility in the form of an operational flow order, operational matching order, or otherwise is greater or less than the quantity scheduled in a purchase order to which this Agreement applies, and as a result Seller shall incur extra cost to produce or transport natural gas as a result then Buyer shall be obligated to pay these extra costs to Seller.

5. **Purchase Price:** During the term of this Agreement, Buyer will pay to Seller the price as specified in an applicable Exhibit A for all Gas purchased or received by Buyer. All references to NYMEX or NYMEX LDS shall mean "Nymex Last Day Settle per Platt's Inside FERC".

If in a given month Buyer consumes gas in excess of the contract volume tolerance as described in the applicable Exhibit A, any excess gas shall be priced as Seller's current Market Prices. If in a given month Buyer consumes less gas than the minimum contract volume tolerance as described in the applicable Exhibit A, Seller shall buyback any unused volumes as Seller's current Market Prices.

In the absence of agreement regarding pricing for any extension of service beyond the initial term of any then applicable purchase order, deliveries shall be charged at Seller's current Market Prices.

Buyer may from time to time convert a NYMEX or other index based price to a Fixed Price at mutually agreeable terms, but only for all or part of the contract volumes specified in the applicable purchase order. The Fixed Priced conversion will be communicated by Seller to Buyer via a facsimile transmission detailing the date/time and price of the Fixed Price conversion. It should be signed and returned by Buyer but will be considered executed if not responded to within 48 hours.

6. **Failure to Deliver or Receive Gas:** If Seller fails to deliver all or part of the Gas (including pursuant to the applicable purchase order in the event Buyer converts to a fixed price pursuant to Paragraph 5 above) and the failure is not excused under the terms of the Agreement or by Buyer's Event of Default, then Seller will credit Buyer an amount for the deficiency equal to the positive

difference, if any, obtained by subtracting the Sales Price from the Market Price of the deficient quantity.

If Buyer fails to receive or accept all or part of the Gas (including pursuant to the applicable purchase order in the event Buyer converts to a fixed price pursuant to Paragraph 5 above) and the failure is not excused under the terms of the Agreement or by Seller's Event of Default, then Buyer will pay Seller an amount for the deficiency equal to the positive difference, if any, obtained by subtracting the Market Price from the Sales Price of the deficient quantity.

"Market Price" as referred to from time to time in this Agreement means the market price of similar quantities of Gas from time to time at the Point of Delivery as determined by Seller's reasonable determination.

These section 6 remedies are in addition to the remedies of the injured party available under section 8 below and/or otherwise provided by law or this Agreement.

7. Events of Default: "Event of Default" means (i) the failure of Buyer (or its guarantor) to make any payment required by the applicable due date; (ii) the failure of Buyer to provide satisfactory Credit Assurance (as defined below) to Seller; (iii) either Party (or its guarantor) is or becomes Bankrupt, and (iv) the failure of either Party to perform any obligation not specifically addressed above and the failure is not cured within ten (10) days of receipt of written demand for cure, except for the failure of a Party to deliver or receive Gas under the applicable purchase order, which deficiency is cured by payment of the amount due, if any, under Section 6.

"Bankrupt" means with respect to any entity, the entity (i) files a petition or otherwise commences, authorizes or acquiesces in the commencement of a proceeding or cause of action under any bankruptcy, insolvency, reorganization or similar law, or has any such petition filed or commenced against it, (ii) makes an assignment or any general arrangement for the benefit of creditors, (iii) otherwise becomes bankrupt or insolvent (however evidenced), (iv) has a liquidator, administrator, receiver, trustee, conservator or similar official appointed with respect to it or any substantial portion of its property or assets, or (v) is generally unable to pay its debts as they fall due.

If either party has reasonable grounds for insecurity regarding the performance of any obligation of the other party under this Agreement (whether or not then due) then the party who has reasonable grounds (including, without limitation, the occurrence of a material change in the credit worthiness of the other party), may demand "Credit Assurance". Credit Assurance shall be sufficient security in the form, amount and for the term reasonably acceptable to the party making such demand, including, but not limited to, a standby irrevocable letter of credit, a prepayment, a security interest in an asset or a performance bond.

8. Remedies: Upon the occurrence and during the continuance of an Event of Default, the non-defaulting Party may in addition to any other remedies that it may have: (i) suspend any Gas deliveries due hereunder; (ii) upon written notice at least one day in advance, accelerate any or all amounts owing between the Parties under the Agreement and terminate and liquidate any or all transactions; (iii) determine a settlement amount for the applicable purchase order by calculating the gains, losses and costs (including reasonable attorney's fees and the costs of obtaining, maintaining and liquidating commercially reasonable hedges) incurred as a result of the liquidation, discounted to present value at 6% per annum, and (iv) calculate a net settlement amount by aggregating into one amount all settlement amounts and all other amounts owing between the Parties under the Agreement.

Any net settlement amount due from the defaulting Party to the non-defaulting Party will be paid within three (3) days of receipt of written notice from the non-defaulting Party. Interest on any unpaid portion of the net settlement amount will accrue daily at the interest rate provided for in Paragraph 13. The gain or loss for each liquidated transaction may be calculated by any commercially reasonable method chose by the non-defaulting party, including by determining the difference between the Sales Price and the Market Price of the contract quantities remaining to be delivered during the Sales Period.

After calculation of a net settlement amount, if the defaulting Party would be owed the net settlement amount the non-defaulting Party shall be entitled, at its option and in its discretion, to set off against such net settlement amount any amounts due and owing by the defaulting Party or any of its affiliates to the non-defaulting Party or any of its affiliates under any other agreements, instruments or undertakings between the defaulting Party or any of its affiliates and the non-defaulting Party or any of its affiliates.

Provided, however, that notwithstanding anything which may be contained in this Agreement to the contrary, or otherwise, no Party shall be entitled to recover any punitive damages, lost profits, or amount as damages other than as expressly provided for in this Agreement.

9. Waiver/Cumulative Remedies: No delay or failure by a Party to exercise any right or remedy to which it may become entitled will constitute a waiver of that right or remedy. All waivers must be in writing. All remedies will be without prejudice and in addition to any right of setoff, recoupment, combination of accounts, lien or other right to which any Party or any of its affiliates is at any time otherwise entitled (whether by operation of law or in equity, under contract or otherwise).

10. Warranties: Seller warrants that it has good title to all Gas delivered, that Seller has the right to sell such Gas, and that such Gas shall be free from all royalties, liens, encumbrances, and all applicable taxes that are imposed upon the production and/or removal of Gas prior to passage of title.

EXCEPT AS PROVIDED IN THIS PARAGRAPH 10, ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE DISCLAIMED.

11. Title and Liability: Title to, possession of, and risk of loss of the Gas will pass from the Seller to the Buyer at the applicable Point of Delivery.

12. Force Majeure: Non-performance of any obligation hereunder, other than (i) the obligation to pay for Gas taken and (ii) the obligation to pay for quantities of Gas not taken as specified in an applicable Exhibit A, will be excused if prevented by an occurrence of Force Majeure, but only for so long as performance is prevented by such Force Majeure. The party claiming excuse will promptly advise the other party of such Force Majeure event, and shall seek to remedy the occurrence. Force Majeure will mean any event beyond the reasonable control of a Party, which prevented in whole or in part, that Party's performance of obligations hereunder. Force Majeure will include: act of God; strike; lockout; act of the public enemy; war; blockade; public riot; fire, storm, flood; freeze; explosion; governmental restraint; and any other unforeseeable uncontrollable event. Force Majeure will not excuse Buyer from paying for Gas it receives or purchases. Force majeure shall not excuse Buyer from responsibility for imbalance penalties

13. Billing and Payment: Seller will invoice Buyer for Gas delivered under this Agreement and its related purchase orders. Buyer will make payment pursuant to Seller's invoice instructions within fifteen (15) days of the date of Seller's invoice, or as specified in an applicable Exhibit A. If the volumes delivered cannot be verified by Seller at the time the invoice is issued, the invoice volumes will be based on Seller's good faith estimate of the volumes delivered. Seller will adjust buyer's account following confirmation of the actual volumes delivered.

If Buyer fails to remit the full amount payable by it when due, Buyer shall pay interest from the due date until the date payment is made at the lesser of (i) 12% per annum or (ii) the maximum rate allowed by law ("Interest Rate"). The non-paying party will be responsible for all costs, fees and expenses (including reasonable attorney's fees) incurred by Seller in collecting the amount payable.

14. Gas Quality and Measurement: The Gas that shall be delivered by the Seller shall be of such quality and pressure as shall be acceptable to utility transporting the Gas to the Buyer. Measurement, testing and heat content of the Gas purchased hereunder shall be governed by the applicable measurement and testing procedures required by the receiving transporter(s).

15. Notices: Notices may be sent by e-mail, fax, or first class mail, as follows:

Seller
Snyder Brothers, Inc.
P. O. Box 1022, One Glade Park East
Kittanning, PA 16201
Tel: (724) 548-8101
Fax: (724) 545-8243
E-Mail: gasmarketing@snydercos.com
ATTN: Nathan Henry, Ben Snyder

Buyer
Ohio Valley Medical Center
2000 Eoff Street
Wheeling, WV 26003
TEL: (304) 234-8866
FAX: (304) 234-8571
E-Mail: skinneer@ovrh.org
ATTN: Vernon Kinneer

16. Assignment: Neither party shall assign this Agreement or any of its rights pursuant to this Agreement without the consent of the other party, which consent shall not be unreasonably withheld or delayed.

17. Indemnification: Seller agrees to indemnify Buyer and save it harmless from all losses, liabilities or claims including reasonable attorneys fees and costs of court, from any and all persons, including from said Gas or other charges thereon, which attach before title passes to Buyer arising from or out of claims of title, personal injury or property damage from said Gas or other charges thereon which attached before title passes to Buyer.

Buyer agrees to indemnify Seller and save it harmless from all claims, from any and all persons, arising from or out of claims regarding payment, personal injury or property damage from said Gas or other charges thereon which attached after title passes to Buyer.

18. Miscellaneous: This Contract shall be construed in accordance with the governing laws of the Commonwealth of Pennsylvania, without recourse to provisions governing choice of law. All defined terms used in this Agreement, not defined in this Agreement, but defined in the purchase order, shall have such meanings as provided for in such purchase order. This Agreement represents the complete agreement of the parties and supersedes all prior or contemporaneous agreements to the contrary. Time shall be of the essence for all-purpose pursuant to this Agreement.

SELLER
SNYDER BROTHERS, INC.
1 Glade Park East, P.O. Box 1022
Kittanning, PA 16201
PH:   (724) 548-8101
FAX: (724) 545-8243

BY: _____
TITLE: V.P.
DATE: 7/2/14

BUYER
Ohio Valley Medical Center
2000 Eoff Street
Wheeling, WV 26003
PH: (304) 234-8866
FAX: (304) 234-8571

BY: S._____
TITLE: Plant Operations Manager
DATE: 6/21/2013.



TERM PURCHASE ORDER #_____

This Purchase Order, together with the Natural Gas Agreement between Seller and Buyer dated ___10/31___, 2017, constitutes a Contract between:

SELLER:   SNYDER BROTHERS, INC.

BUYER:    Ohio Valley Medical Center

Buyer agrees to pay Seller for all volumes of natural gas consumed in a given contract month at the price specified below in section 4 below. Buyer may convert up to 100% of the Contract Volume to a Fixed Price in the manner described in the Natural Gas Agreement. When price is converted to "Fixed", Snyder Brothers, Inc. will pruchase all contract gas and customer agrees that services will be considered complete on that date with monthly volume deliveries to be as scheduled below. If Buyer has converted some or all of the Contract Volume to a Fixed Price in a given month, the price for all gas consumed in that month shall be calculated by taking a weighted average price for (1) all Fixed Price conversions and (2) any remaining Contract Volume at the price specified in section 4 below.

1  Sales Period:    Nov 1, 2017 – Dec 31, 2018

2  Monthly Contract Quantity (Dekatherms):

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jan | 6850 | May | 0 | Sep | 0 |
| Feb | 5000 | Jun | 0 | Oct | 1650 |
| Mar | 2350 | Jul | 0 | Nov | 4100 |
| Apr | 700  | Aug | 0 | Dec | 6350 |

3  Account Nos:  506656-565847    543043-637258

4  Sales Price:   **Nymex plus $.16**

5  Point of Delivery: Mountaineer City Gate
6  Point of Receipt: Snyder Brothers MGC Pool
7  Payment Terms: Net (15) days after date of invoice.
8  Natural gas supply is 100% West Virginia Production
9. Level of Service:  100% Swing

| SELLER | BUYER |
|---|---|
| Snyder Brothers, Inc. | Ohio Valley Medical Center |
| P.O. Box 1022 | 2000 Eoff Street |
| One Glade Park East | Wheeling, WV 26003 |
| Kittanning, PA 16201 | Attn:    Narendran Sridhar |
| PH:   724-548-8101 | PH:    (304) 234-8316 |
| FAX:  724-545-8243 | FAX:   (304) 234-8571 |
| Email: gasmarketing@snydercos.com | EMAIL: nsridhar@ovrh.org |
| BY:   _Na C Ll_ | BY:   _[signature]_ |
| TITLE: _VP Gas Marketing_ | TITLE: _VP- 7 UPC_ |
| DATE: _11/01/17_ | DATE: _10/21/2017_ |

## TERM PURCHASE ORDER #_____

This Purchase Order, together with the Natural Gas Agreement between Seller and Buyer dated _____ 2017 constitutes a Contract between

**SELLER** SNYDER BROTHERS, INC.
**BUYER** Ohio Valley Medical Center

Buyer agrees to pay Seller for all volumes of natural gas consumed in a given contract month at the price specified below in section 4 below. Buyer may convert up to 100% of the Contract Volume to a Fixed Price in the manner described in the Natural Gas Agreement. When price is converted to "Fixed" Snyder Brothers, Inc. will purchase all contract gas and customer agrees that services will be considered complete on that date with monthly volume deliveries to be as scheduled below. If Buyer has converted some or all of the Contract Volume to a Fixed Price in a given month, the price for all gas consumed in that month shall be calculated by taking a weighted average price for (1) all Fixed Price conversions; and (2) any remaining Contract Volume at the price specified in Section 4 below.

1. Sales Period:   Nov 1, 2017 – Dec 31, 2018
                   Nov 1, 2017 – Dec 31, 2019
                   Nov 1, 2017 – Dec 31, 2020

2. Monthly Contract Quantity (Dekatherms)

| Jan | 4272 | May | 4905 | Sep | 3937 |
|---|---|---|---|---|---|
| Feb | 5314 | Jun | 4037 | Oct | 3222 |
| Mar | 4362 | Jul | 3567 | Nov | 3097 |
| Apr | 5372 | Aug | 3014 | Dec | 2530 |

3. Account Nos: 546656-565847    530413-612258

4. Sales Price:

| | | Choose one |
|---|---|---|
| Nymex plus $.22 | One year | X |
| Nymex plus $.20 | Two years | |
| Nymex plus $.24 | Three years | |

5. Point of Delivery: Mountaineer City Gate
6. Point of Receipt: Snyder Brothers NGC Pool
7. Payment Terms: Net (15) days after date of invoice.
8. Natural gas supply is 100% West Virginia Production
9. Level of Service: 100% Swing

| SELLER | BUYER |
|---|---|
| Snyder Brothers, Inc. | Ohio Valley Medical Center |
| P.O. Box 1022 | 2000 Eoff Street |
| One Glade Park East | Wheeling, WV 26003 |
| Kittanning, PA 16201 | Attn: Narendran Sridhar |
| PH: 724-548-8101 | PH: (304) 234-8316 |
| FAX: 724-545-8293 | FAX: (304) 234-8571 |
| Email: _____ @snyderbi.com | EMAIL: msridhar@ovrh.org |
| BY: _____ | BY: _____ |
| TITLE: _____ | TITLE: _____ |
| DATE: 11/3/17 | DATE: 11/1/2017 |



TERM PURCHASE ORDER #_____

This Purchase Order, together with the Natural Gas Agreement between Seller and Buyer dated _____10/1_____, 2018, constitutes a Contract between:

SELLER:        SNYDER BROTHERS, INC.

BUYER:         Ohio Valley Medical Center

Buyer agrees to pay Seller for all volumes of natural gas consumed in a given contract month at the price specified below in section 4 below.  Buyer may convert up to 100% of the Contract Volume to a Fixed Price in the manner described in the Natural Gas Agreement.  When price is converted to "Fixed", Snyder Brothers, Inc. will pruchase all contract gas and customer agrees that services will be considered complete on that date with monthly volume deliveries to be as scheduled below.  If Buyer has converted some or all of the Contract Volume to a Fixed Price in a given month, the price for all gas consumed in that month shall be calculated by taking a weighted average price for (1) all Fixed Price conversions and (2) any remaining Contract Volume at the price specified in section 4 below.

1. Sales Period:    January 1, 2019 – Dec 31, 2019
                    January 1, 2019 – Dec 31, 2020
                    January 1, 2019 – Dec 31, 2021    NAH

2. Monthly Contract Quantity (Dekatherms):

| Jan | 6850 | May | 0 | Sep | 0 |
| Feb | 5000 | Jun | 0 | Oct | 1650 |
| Mar | 2350 | Jul | 0 | Nov | 4100 |
| Apr | 700  | Aug | 0 | Dec | 6350 |

3. Account Nos:   506656-565847        543043-637258

4. Sales Price:

| | | choose one: |
|---|---|---|
| Nymex plus $.40 | One year | |
| Nymex plus $.37 | Two years | |
| Nymex plus $.32 | Three years | ✓ |

NAH

5. Point of Delivery:  Mountaineer City Gate
6. Point of Receipt:   Snyder Brothers MGC Pool
7. Payment Terms:  Net (15) days after date of invoice.
8. Natural gas supply is 100% West Virginia Production
9. Level of Service:  100% Swing

| **SELLER** | **BUYER** |
|---|---|
| Snyder Brothers, Inc. | Ohio Valley Medical Center |
| P.O. Box 1022 | 2000 Eoff Street |
| One Glade Park East | Wheeling, WV  26003 |
| Kittanning, PA 16201 | Attn:       Narendran Sridhar |
| PH:    724-548-8101 | PH:         (304) 234-8316 |
| FAX:   724-545-8243 | FAX:        (304) 234-8571 |
| Email: gasmarketing@snydercos.com | EMAIL:   nsridhar@ovrh.org |
| BY:    [signature] | BY:         [signature] |
| TITLE: VP Gas Marketing | TITLE:   Director Of Operations |
| DATE:  10/5/18 | DATE:    10/1/2018 |