**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SNYDER BROTHERS, INC., <br> Plaintiff, | Civil Action No. 2:20-cv-1974 |
| v. | Judge Marilyn J. Horan |
| ALECTO HEALTHCARE SERVICES, LLC <br> Defendant | |

**AMENDED COMPLAINT**

Plaintiff, Snyder Brothers, Inc., by and through its attorneys, Eckert Seamans Cherin & Mellott, LLC, files this Amended Complaint against Defendant, Alecto Healthcare Services, LLC, and states the following in support thereof:

**PARTIES**

1. Plaintiff, Snyder Brothers, Inc. ("Snyder Brothers"), is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 409 Butler Road, Kittanning, Pennsylvania 16201.

2. Defendant, Alecto Healthcare Services, LLC ("Alecto"), is a Delaware limited liability company with principal place of business at 16310 Bake Parkway, Suite 200, Irvine, California 92618.

3. Alecto is the parent company of Alecto Healthcare Services Martin's Ferry, LLC ("Alecto – Martins Ferry"), a Delaware limited liability company with its principal place of business at 16310 Bake Parkway, Suite 200, Irvine, California 92618.

4. Alecto – Martins Ferry acquired East Ohio Regional Hospital at Martin's Ferry, Inc. d/b/a/ East Ohio Regional Hospital ("East Ohio Regional Hospital"), which is an Ohio non-profit corporation with a principal place of business at 90 N. 4th Street, Martins Ferry, Ohio 43935.

5. Alecto is also the parent company of Alecto Healthcare Services Ohio Valley, LLC ("Alecto – Ohio Valley"), which is a Delaware limited liability company with its principal place of business at 16310 Bake Parkway, Suite 200, Irvine, California 92618. Alecto – Ohio Valley, in conjunction with Alecto Healthcare Services Wheeling, LLC, acquired Ohio Valley Medical Center, Inc. ("Ohio Valley Medical Center"), a West Virginia Corporation with a principal place of business at 2000 Eoff Street, Wheeling, West Virginia 26003.

6. Alecto is also the parent company of Alecto Healthcare Services Wheeling, LLC ("Alecto – Wheeling"), which is a Delaware limited liability company with its principal place of business at 16310 Bake Parkway, Suite 200, Irvine, California 92618. Alecto – Wheeling, in conjunction with Alecto – Ohio Valley, acquired Ohio Valley Medical Center. Collectively, Alecto – East Ohio, Alecto – Ohio Valley, and Alecto – Wheeling will be referred to as the "Alecto Subsidiaries."

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.

8. Upon information and belief, formed after numerous good-faith searches of court records and public records, none of Alecto's members are citizens of Pennsylvania.

9. Alecto, at all times relevant hereto and as discussed more fully below, knew that Snyder Brothers was a Pennsylvania entity whose headquarters and operations are in Pennsylvania.

10. Alecto, at all times relevant hereto and as discussed more fully below, knew of the agreements with Snyder Brothers, which (1), were governed by Pennsylvania law, (2) negotiated and renegotiated through the parties' employees and agents that made multiple and on-going contacts to people in Pennsylvania, and (3) required the remission of payment to Snyder

Brothers in Pennsylvania for natural gas that was produced, processed, and transported in Pennsylvania. Alecto, as discussed more fully below, knowingly, willfully, and fraudulently transferred significant sums of money from the Alecto Subsidiaries, rendering the Alecto Subsidiaries insolvent and depriving them of the ability to pay the amounts due under the operative agreements, which exceeds $338,035.73.

11. This Court has personal jurisdiction over Alecto for the purposes of this dispute because Alecto directed and encouraged the Alecto Subsidiaries to solicit patients from Pennsylvania; patients from Pennsylvania requested and received medical services at the Alecto Subsidiaries and remitted payment for the same from sources, programs, and/or plans in Pennsylvania; Alecto diverted the payments from Pennsylvania residents and Pennsylvania sources by pilfering the Alecto Subsidiaries' coffers and draining them of their assets while knowing that the Alecto Subsidiaries were obligated to deliver payments to Snyder Brothers in Pennsylvania; Alecto committed tortious interference with Plaintiff's contractual relationship with the Alecto Subsidiaries in Pennsylvania by siphoning their funds with the explicit purpose of preventing them from paying creditors, such as Snyder Brothers; Snyder Brothers suffered the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm; and Alecto expressly aimed its conduct at the forum such that the forum can be said to be the focal point of Alecto's tortious activity.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to this action occurred in this District insofar as Alecto tortiously interfered with Snyder Brothers's contract with the Alecto Subsidiaries, which Pennsylvania law governed and required payments to be delivered in Pennsylvania for Pennsylvania goods, by repeatedly and illegally siphoning off assets of its wholly owned subsidiaries, Alecto –

Martins Ferry and Alecto – Ohio Valley—assets that Alecto's Subsidiaries were contractually required to deliver to Snyder Brothers in Pennsylvania, as more fully set forth below

## FACTUAL BACKGROUND

*The Parties*

13. Snyder Brothers is an independent producer of natural gas in Pennsylvania and supplies natural gas to clients in Pennsylvania, Ohio, and West Virginia.

14. East Ohio Regional Hospital and Ohio Valley Medical Center were each comprehensive health care facilities that provided inpatient and outpatient medical care and treatment in Ohio and West Virginia, respectively.

15. Alecto is a national company that owns and operates health care facilities that provide inpatient and outpatient treatment throughout the United States.

*The Provision of Natural Gas to Ohio Valley Medical Center*

16. On July 2, 2014, Snyder Brothers and Ohio Valley Medical Center executed a Natural Gas Agreement governed by Pennsylvania law under which Snyder Brothers agreed to sell and to deliver, and Ohio Valley Medical Center agreed to purchase and to take, all of the natural gas specified on applicable purchase orders between them, which included natural gas that Snyder Brothers produced, processed, and transported in Pennsylvania. This Natural Gas Agreement required Ohio Valley Medical Center to remit payments to Snyder Brothers in Pennsylvania. Plaintiff hereto has attached and herein has incorporated a copy of this Natural Gas Agreement as Exhibit "A."

17. In 2017, Alecto formed or directed the formation of Alecto – Ohio Valley and Alecto – Wheeling, became the parent company of those entities, and ultimately was owner of those entities.

18. At and after the formation of those entities, Alecto (1) failed to sufficiently capitalize or to maintain capitalization of those entities, leading to the closure and the insolvency of the hospital *infra* within a short span of time after its acquisition; (2) failed to observe corporate formalities with respect to those entities; (3) directed those entities to make decisions with respect to their operations, had direct control over and access to its bank accounts, and finances and otherwise influenced their day-to-day operations; (4) diverted their funds and assets, commingled their funds and assets, or otherwise directed how they should use their income and assets and should treat their debts and obligations, such as sending equipment and furniture to other Alecto-owned entities; (5) shared common management and decision makers with the entities, such as having Alecto's controller serve as these subsidiaries' chief financial officer; and (6) held itself out to the public as one unified entity with those entities. Alecto, upon information and belief, formed those entities for the purpose of avoiding the claims of creditors, such as Plaintiff, defrauding creditors, and attempting to insulate itself from liability for the provision of goods and services from which it benefited, but did not pay adequate compensation.

19. On or about January 16, 2017, Alecto, Alecto – Ohio Valley, and Alecto – Wheeling, acquired Ohio Valley Medical Center and assumed that entity's rights and responsibilities under the aforementioned Natural Gas Agreement.

20. On October 31, 2017, Plaintiff, Alecto, Alecto – Ohio Valley, and/or Alecto – Wheeling executed a Term Purchase Order (hereinafter the "First 2017 OVMC Purchase Order"). Plaintiff hereto has attached and herein has incorporated the First 2017 Purchase Order as Exhibit "B."

21. Pursuant to the terms of the First 2017 OVMC Purchase Order, Plaintiff was to supply the following amounts of dekatherms of natural gas to the hospital in 2018 based on the NYMEX market price plus sixteen cents:

| Month | Amount |
|---|---|
| January | 6,850 |
| February | 5,000 |
| March | 2,350 |
| April | 700 |
| May | 0 |
| June | 0 |
| July | 0 |
| August | 0 |
| September | 0 |
| October | 1,650 |
| November | 4,100 |
| December | 6,350 |

22. On November 13, 2017, Plaintiff, Alecto, Alecto – Ohio Valley, and Alecto – Wheeling executed a Term Purchase Order for the supply of additional natural gas in 2018 (hereinafter the "Second 2017 OVMC Purchase Order").  Plaintiff hereto has attached and herein has incorporated the Second 2017 OVMC Purchase Order as Exhibit "C."

23. Pursuant to the terms of the Second 2017 OVMC Purchase Order, Plaintiff was to supply the following additional amounts of dekatherms of natural gas to this hospital in 2018 based on the NYMEX market price plus twenty-two cents:

| Month | Amount |
|---|---|
| January | 4,272 |
| February | 5,314 |
| March | 4,362 |
| April | 5,372 |
| May | 4,905 |
| June | 4,037 |
| July | 3,567 |
| August | 3,014 |
| September | 2,917 |
| October | 3,222 |
| November | 3,097 |

| December | 2,530 |

24. On October 1, 2018, Plaintiff, Alecto, Alecto – Ohio Valley, and Alecto – Wheeling executed a third Term Purchase Order (hereinafter the "2018 OVMC Purchase Order"). Plaintiff hereto has attached and herein has incorporated the 2018 OVMC Purchase Order as Exhibit "D."

25. Pursuant to the terms of the Purchase Order, Plaintiff was to supply the following amounts of dekatherms of natural gas to this hospital from 2019 to 2021 based on the NYMEX market price plus thirty-two cents:

| Month | Amount |
|---|---|
| January | 6,850 |
| February | 5,000 |
| March | 2,350 |
| April | 700 |
| May | 0 |
| June | 0 |
| July | 0 |
| August | 0 |
| September | 0 |
| October | 1,650 |
| November | 4,100 |
| December | 6,350 |

26. In 2018 and 2019, Plaintiff supplied this hospital with the requisite amounts of natural gas and the hospital received and used said natural gas.

27. Plaintiff regularly billed this hospital for the natural gas that it supplied in 2018 and 2019.

28. Alecto, Alecto – Ohio Valley, and Alecto – Wheeling repeatedly failed to remit payment for the natural gas that Plaintiff supplied in 2018 and 2019.

29. These parties entered into payment plans in 2018 and 2019. Alecto needed to review and to approve these plans before their implementation, because the hospital was not paying the invoices for the supplied natural gas.

30. Alecto – Ohio Valley and Alecto – Wheeling failed and/or refused to remit payment to Snyder Brothers because Alecto repeatedly diverted and/or withdrew money from its bank account(s), transferred their assets to others for less than fair market value such that they could not liquidate them and pay their bills, gifted their assets to others for less than fair market value such that they could not liquidate them and pay their bills, and otherwise directed or restricted their financial affairs so that the hospital could not pay and would not have the funds to pay the hospital's invoices even though Alecto was aware of the Natural Gas Agreement, the provision of the natural gas, and the use of the natural gas.

31. Alecto, furthermore, failed or refused to remit payment to Snyder Brothers for the natural gas from which it and its subsidiaries benefited on the basis that it could hide behind layers of corporate shielding even though those entities were its alter ego, a single entity, and/or mere instrumentality of it.

*The Provision Natural Gas to East Ohio Regional Hospital*

32. On May 25, 2016, Plaintiff and East Ohio Regional Hospital executed a Natural Gas Agreement governed by Pennsylvania law under which Snyder Brothers agreed to sell and to deliver, and East Ohio Regional Hospital agreed to purchase and to take, all of the natural gas specified on a purchase order pursuant to that Natural Gas Agreement, which included natural gas that Snyder Brothers produced, processed, and transported in Pennsylvania. Plaintiff hereto has attached and herein has incorporated a copy of this Natural Gas Agreement as Exhibit "E."

33. On May 25, 2016, Plaintiff and East Ohio Regional Hospital executed a Term Purchase Order (hereinafter the "2016 EORH Purchase Order"). Plaintiff hereto has attached and herein has incorporated the Purchase Order as Exhibit "F."

34. Pursuant to the terms of the 2016 EORH Purchase Order, Plaintiff was to supply the following amounts of dekatherms of natural gas to the hospital in 2017 and 2018 based on the NYMEX market price plus five cents:

| Month | Amount |
|---|---|
| January | 5,988 |
| February | 5,209 |
| March | 5,991 |
| April | 4,376 |
| May | 3,110 |
| June | 2,777 |
| July | 2,521 |
| August | 2,282 |
| September | 2,781 |
| October | 3,025 |
| November | 3,811 |
| December | 4,860 |

35. In 2017, Alecto formed or directed the formation of Alecto - Martin's Ferry, became the parent company of that entity, and ultimately was owner of that entity.

36. At and after the formation of that entity, Alecto (1) failed to sufficiently capitalize or to maintain capitalization of that entity, leading to the insolvency and the closure of that hospital *infra* within a short span of time after its acquisition; (2) failed to observe corporate formalities with respect to that entity; (3) directed that entity to make decisions with respect to its operations and finances, had direct control over and access to its bank accounts, and otherwise influenced its day-to-day operations; (4) diverted its funds and assets, commingled

their funds and assets, or otherwise directed how it should use its income and assets and should treat its debts and obligations, such as sending equipment and furniture to other Alecto-owned entities; (5) shared common management and decision makers with that entity, such as having Alecto's controller serve as that entity's chief financial officer; and (6) held itself out to the public as one unified entity with Alecto - Martin's Ferry. Alecto, upon information and belief, formed that entity for the purpose of avoiding the claims of creditors, such as Plaintiff, defrauding creditors, and attempting to insulate itself from liability for the provision of goods and services from which it benefited, but did not pay adequate compensation.

37. On or about January 16, 2017, Alecto and Alecto - Martin's Ferry acquired East Ohio Regional Hospital and assumed that entity's rights and responsibilities under the aforementioned Natural Gas Agreement.

38. On October 1, 2018, Plaintiff, Alecto, and/or Alecto - Martin's Ferry executed a second Term Purchase Order (hereinafter the "2018 EORH Purchase Order"). Plaintiff hereto has attached and herein has incorporated the Purchase Order as Exhibit "G."

39. Pursuant to the terms of the 2018 EORH Purchase Order, Plaintiff was to supply the following amounts of dekatherms of natural gas to this hospital from 2019 to 2021 based on the NYMEX market price plus thirteen cents:

| Month | Amount |
|---|---|
| January | 5,988 |
| February | 5,209 |
| March | 5,991 |
| April | 4,376 |
| May | 3,110 |
| June | 2,777 |
| July | 2,521 |
| August | 2,282 |

| | |
|---|---|
| September | 2,781 |
| October | 3,025 |
| November | 3,811 |
| December | 4,860 |

40. In 2018 and 2019, Plaintiff supplied this hospital with the requisite amounts of natural gas and the hospital received and used said natural gas.

41. Plaintiff regularly billed this hospital for the natural gas that it supplied in 2018 and 2019.

42. Alecto and Alecto – Martin's Ferry repeatedly failed to remit payment for the natural gas that Plaintiff supplied in 2018 and 2019.

43. These parties entered into payment plans in 2018 and 2019. Alecto needed to review and to approve these plans before their implementation, because the hospital was not paying the invoices for the supplied natural gas.

44. Alecto – Martin's Ferry failed and/or refused to remit payment to Snyder Brothers because Alecto repeatedly diverted and/or withdrew money from its bank account(s), transferred its assets to others for less than fair market value such that it could not liquidate them and could not pay its bills, gifted its assets to others for less than fair market value such that it could not liquidate them and could not pay its bills, and otherwise directed or restricted its financial affairs so that the hospital could not pay and would not have the funds to pay the hospital's invoices, even though Alecto was aware of the Natural Gas Agreement, the provision of the natural gas, and the use of the natural gas.

45. Alecto, furthermore, failed or refused to remit payment to Snyder Brothers for the natural gas from which it and Alecto – Martin's Ferry benefited on the basis that it could hide behind layers of corporate shielding even though Alecto – Martin's Ferry was its alter ego, they were a single entity, and/or it was mere instrumentality.

11

## COUNT I – FRAUDULENT TRANSFER UNDER 12 Pa. C.S.A. § 5105 *et seq.*

46. Snyder Brothers incorporates the preceding paragraphs as though fully set forth herein.

47. The Alecto Subsidiaries are debtors of Snyder Brothers by virtue of the payments due under Natural Gas Agreements.

48. Alecto – Martin's Ferry is also a debtor of Snyder Brothers by virtue of the Consent Judgment that this Court entered against it.

49. The Alecto Subsidiaries, ordered to do so by their parent company Alecto, made serial fraudulent transfers of substantially all of their liquid and/or unencumbered assets to Alecto or other entities related to Alecto with the intent to hinder, to delay and/or to defraud Snyder Brothers, which is a creditor.

50. Alecto and the Alecto Subsidiaries function much closer than arms' length insofar as Alecto substantially controls the day-to-day operations of the Alecto Subsidiaries.

51. The Alecto Subsidiaries received no consideration, much less consideration in reasonably equivalent value, from Alecto in exchange for making the fraudulent transfers.

52. Alecto and the Alecto Subsidiaries made the fraudulent transfers despite the fact that the entities should have known that they had debts to satisfy and would incur debts beyond their ability to pay them as those debts became due.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court void the fraudulent transfers, hold Defendant accountable for the same, and grant any other such relief as this Court may deem just and proper or is available under 12 Pa. C.S.A. § 5105 *et seq*.

## COUNT II – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

53. Snyder Brothers incorporates the preceding paragraphs as though fully set forth herein.

54. The Alecto Subsidiaries had an obligation to remit payment to Snyder Brothers for the natural gas that it provided to the hospitals pursuant to the Natural Gas Agreements.

55. Alecto was aware that the Alecto Subsidiaries had an obligation to do so because of the degree and frequency of its control over them.

56. In ordering the Alecto Subsidiaries to execute the fraudulent transfers, siphoning and/or diverting money from the Subsidiaries' bank account(s), disposing of the Alecto Subsidiaries' assets, and otherwise orchestrating the Alecto Subsidiaries' finances and operations, Alecto purposefully interfered with Plaintiff's contractual relationship with the Alecto Subsidiaries, with the intent of damaging their contractual relationship with Plaintiff insofar as the Alecto Subsidiaries did not have the assets and the funds with which to pay Plaintiff.

57. No privilege or justification exists for Alecto's actions in raiding its Subsidiaries' coffers and inventories, or treating them as local slush funds while depriving the Subsidiaries of their own assets with which to pay their creditors, such as Snyder Brothers, for services requested and rendered.

58. As a result of Alecto's corporate puppetry and orchestration of the fraudulent transfers at the expense of the reasonable business needs of its Subsidiaries, including assets with which to pay creditors and judgment creditors, Snyder Brothers could not receive payment for the amounts due under the Natural Gas Agreements and cannot recover what it is entitled to receive under the consent judgment.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant in the amount of $338,035.73 and to grant such other and further relief as is necessary and proper under the circumstances.

## COUNT III – EQUITABLE RELIEF (PIERCING THE CORPORATE VEIL)

59. Plaintiff incorporates the preceding paragraphs of the Complaint as if set forth more fully herein.

60. The Alecto Subsidiaries assumed all rights and responsibilities under the Natural Gas Agreements.

61. The Alecto Subsidiaries have failed and/or have refused to remit payment for the receipt of natural gas under the Natural Gas Agreements.

62. Alecto, as discussed above, failed to sufficiently capitalize or to maintain capitalization of the Alecto Subsidiaries, leading to their insolvency and their closure shortly after their acquisition; failed to observe corporate formalities with respect to that entity, including, but without limitation, keeping records; directed the Alecto Subsidiaries to make decisions with respect to their operations and finances, such as which contracts to pay, when, and how much; had direct control over and access to the bank accounts of the Alecto Subsidiaries; influenced the day-to-day operations of the Alecto Subsidiaries; diverted the Alecto Subsidiaries' funds and assets, commingled their funds and assets, or otherwise directed how they should use their income and assets and should treat its debts and obligations, such as sending equipment and furniture to other Alecto-owned entities so that they could not pay their debts under the Natural Gas Agreements; shared common management and decision makers with the Alecto Subsidiaries, such as having its controller serve as the subsidiaries' chief financial officer; and held itself out to the public as one unified entity with the Alecto Subsidiaries.

63. Alecto reviewed the hospital's Purchase Orders and needed to approve them before their execution by the Alecto Subsidiaries.

64. Alecto needed to review and to approve the payment plans for the Natural Gas Agreements before their implementation.

65. Alecto, upon information and belief, formed the Alecto Subsidiaries for the purpose of avoiding the claims of creditors, such as Plaintiff, defrauding creditors, and attempting to insulate itself from liability for the provision of goods, such as natural gas, from which it benefited, but did not pay adequate compensation.

66. The foregoing demonstrates that the Alecto Subsidiaries were an alter ego, a single entity with, and/or mere instrumentality of Alecto such that it is appropriate to "pierce the corporate veil" and to hold Alecto liable for the actions and debts of its subsidiaries.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court to pierce the corporate veil, to enter judgment in its favor and against Defendant in the amount of $338,035.73, and to grant such other and further relief as is necessary and proper under the circumstances.

## JURY DEMAND

Snyder Brothers, Inc. demand a trial by jury on any and all issues so triable in this case.

Respectfully submitted,

/s/ *Ray F. Middleman*
Ray F. Middleman, PA I.D. 40999
Derek J. Illar, PA I.D. 307492
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, Pennsylvania 15219
Telephone: 412-566-6000
Fax: 412-566-6099

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's Amended Complaint was served on the following person(s) by first class mail and email on May 21, 2021:

Julian E. Neiser
James C. Walls, III
Spilman Thomas & Battle, PLLC
One Oxford Center, Suite 3440
301 Grant Street
Pittsburgh, Pennsylvania 15219
jneiser@spilmanlaw.com
jwalls3@spilmanlaw.com
*Counsel for Defendant, Alecto Healthcare Services, LLC*

Respectfully Submitted,

_____/s/Derek J. Illar_____

Derek J. Illar, Esq.